# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MARCUS A. DEVLIN,

      Plaintiff,

    v.                                                  Civ. No. 19-818 SCY

ANDREW SAUL, Commissioner of Social
Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record, Doc. 15, filed December 10, 2019, in support of Plaintiff Marcus A. Devlin's Complaint, Doc. 1, seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. On April 4, 2020, Mr. Devlin filed his Motion To Reverse And Remand For Rehearing, With Supporting Memorandum. Doc. 22 The Commissioner filed a response on June 2, 2020, Doc. 24, and Mr. Devlin filed a reply on June 9, 2020, Doc. 25. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

## BACKGROUND AND PROCEDURAL RECORD

Claimant Marcus A. Devlin suffers from the following severe impairments: degenerative disc disease of the thoracic spine; cervical arthropathy; major depressive disorder; anxiety

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 3, 10, 11.

disorder; history of cocaine and methamphetamine dependence; chronic hepatitis. Administrative Record ("AR") at 19. Mr. Devlin completed high school and has past relevant work as railroad inspector car repairer, material handler, order filler, foundry laborer, and foundry supervisor. AR 33, 535.

On June 12, 2015, Mr. Devlin filed a Title II application for benefits, alleging disability beginning March 28, 2015. AR 16, 403-04. His application was initially denied on January 22, 2016, and upon reconsideration on July 29, 2016. AR 16, 110, 123. Mr. Devlin requested a hearing on August 24, 2016. AR 229. Administrative Law Judge ("ALJ") Michelle K. Lindsay conducted a hearing in Albuquerque on June 28, 2018. AR 41. Mr. Devlin appeared with legal representation and testified. *Id.* The ALJ also took testimony from Vocational Expert ("VE") Diane Weber. *Id.* On December 7, 2018, the ALJ issued an unfavorable decision. AR 16-25. On July 8, 2019, the Appeals Council denied Mr. Devlin's request for review. AR 1-4. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review. On September 6, 2019, Mr. Devlin filed a timely appeal with this Court. Doc. 1. The Court reserves discussion of the medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

### A.   Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-

step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[2] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[2] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.      Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Mr. Devlin argues that the Court should remand because the ALJ erred in assessing subjective symptom evidence, and the ALJ erred by relying on VE testimony at step five which conflicted with the Dictionary of Occupational Titles, without providing an explanation for the conflict. The Court agrees that the ALJ erred at step five and so will remand for further proceedings. The Court will not address Mr. Devlin's remaining claim of error because it may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

A.      Background

At step 5, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

Based on the testimony of the VE and the RFC, the ALJ identified three jobs that Mr. Devlin can perform:

| DOT Title | DOT Code | SVP | Exertional Level | No. Jobs Nationally |
|---|---|---|---|---|
| cleaner polisher | 709.687-010 | 2 | light | 5,600 |
| routing clerk | 222.687-022 | 2 | light | 41,300 |
| shelving clerk | 249.687-014 | 2 | light | 16,000 |

AR 34.

These jobs, classified as "light" work, matched the ALJ's RFC. AR 34. The ALJ also, however, identified sedentary occupations Mr. Devlin could perform. If someone can perform light work, they can also perform sedentary work. *Id.* The ALJ identified:

| DOT Title | DOT Code | SVP | Exertional Level | No. Jobs Nationally |
|---|---|---|---|---|
| addresser | 209.587-010 | 2 | sedentary | 5,900 |
| table worker | 739.687-182 | 2 | sedentary | 2,900 |
| document preparer | 249.587-018 | 2 | sedentary | 46,400 |

AR 34.

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling ("SSR") 00-4p and further clarified the ALJ's affirmative responsibility to ask about such conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

2000 WL 1898704, at *4.

The Tenth Circuit has also addressed the interplay between a claimant's RFC and the reasoning levels of identified jobs. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In *Hackett*, the Tenth Circuit agreed with the claimant that there is an apparent conflict between level-three reasoning and simple work restrictions. It held that an ALJ may not conclude that a claimant who is restricted to "simple and routine work tasks" can perform a reasoning-level-three job without addressing this conflict. *Id*.

B.     Conflict with the DOT

In support of his Motion, Mr. Devlin argues that the ALJ erred by failing to explain a conflict between the testimony of the VE, which the ALJ relied on to identify jobs that Mr. Devlin can perform given his RFC, and the Department of Labor's Dictionary of Occupational Titles ("DOT"). Doc. 22 at 13-15. The Commissioner confesses error: a conflict existed and so to find Mr. Devlin could perform work the DOT indicates he could not perform given his RFC, the ALJ was required to provide an adequate explanation, which did not occur. Doc. 10-11.

As Mr. Devlin explains, the DOT describes the job of "shelving clerk" as requiring "frequent stooping," which is inconsistent with the RFC limitation to only "occasional stooping." *See* DOT 249.687-014, 1991 WL 672351; *see also* AR 22. The ALJ did not elicit an explanation from the VE for how the shelving clerk job was still consistent with the ALJ's hypothetical despite this discrepancy. AR 34.

7

A second conflict exists with respect to the sedentary jobs. The VE identified a job of document preparer, which the DOT identifies as requiring a reasoning level of 3. *See* DOT 249.587-018, 1991 WL 672349. The RFC in this case limits Mr. Devlin to understanding, remembering, and carrying out "simple instructions," and maintaining attention and concentration to perform and persist at "simple tasks." AR 22. According to the Tenth Circuit's decision in *Hackett*, a limitation to "simple, routine tasks" is inconsistent with reasoning-level-three jobs. 395 F.3d at 1176. Under *Hackett* and SSR 00-4p, therefore, the ALJ was required to evaluate the apparent conflict and, based on her assessment of this conflict, either (1) explain why it was reasonable to conclude that Mr. Devlin would be able to satisfy the specific characteristics of the jobs at issue despite the apparent conflict between the job requirements and his abilities, *or* (2) reject the VE testimony due to the conflict.

The ALJ erred by doing neither.

C.   Harmless error does not apply

The Commissioner confesses error but argues that it is harmless. Doc. 24 at 9-11. That is, the Commissioner argues that, even discarding the jobs of shelving clerk and document preparer, a significant number of jobs still exist in the national economy, such that the Court should affirm. *Id.*

Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In this context, a harmless error analysis would ask whether, after striking the jobs of document preparer and shelving clerk, the number of jobs identified in the other six positions are still so numerous that a reasonable factfinder would be compelled to find that they exist in significant numbers in the national economy. *Id.*; *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

8

In *Allen*, the Tenth Circuit warned that a harmless-error determination, *i.e.*, "deciding in the first instance that a particular number was significant under the circumstances," is different than cases which "involved court review of a *finding* of numerical significance *made by the ALJ.*" 357 F.3d at 1144. That is, instead of conducting a substantial evidence review, a court performing a harmless error analysis is essentially "supply[ing] a missing dispositive finding." *Allen*, 357 F.3d at 1140. "[J]udicial line-drawing in this context is inappropriate." *Id.* "[T]he issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and . . . the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (internal quotation marks omitted).

Here, once the erroneous jobs are subtracted from the total number of jobs the ALJ found "significant" in this case, the number of light jobs drops from 62,900 to 46,900 and the number of sedentary jobs drops from 55,200 to 8,800. AR 34.

The Commissioner argues that the Court should add these two numbers: in other words, the Court can take the 46,900 remaining light jobs and add the 8,800 remaining sedentary jobs. Doc. 24 at 11. This math exercise results in 55,700 jobs. This number, the Commissioner continues, is so close to the number of light jobs with respect to which the ALJ made a finding of numerical significance (62,900), that the Court may safely assume the ALJ would make the same finding with respect to the new number of jobs. *Id.*

The Court disagrees. To begin with, it is not clear that the ALJ found 62,900 rather than 118,100 (62,900 light jobs plus 55,200 sedentary jobs) to be a significant number. The ALJ twice stated that Mr. Devlin was capable of performing work "that existed in significant numbers in the national economy." The first time was in a heading leading in to the ALJ's conclusion that Mr.

Devlin could perform 62,900 light jobs and 55,200 sedentary jobs. AR 33. The second time was after so concluding. AR 34. Although the ALJ did not specify, the most natural reading of the ALJ's decision is that her finding that jobs existed in significant numbers in the national economy applied to the 62,900 light jobs *plus* the 55,200 sedentary jobs. Thus, the drop from what the ALJ found to be significant to what was available was not the difference between 62,900 and 55,700 but, instead, the difference between 118,100 and 55,700.

Moreover, in a harmless error analysis, the relevant question is not whether *this* factfinder would resolve the matter the same way; instead, the relevant question is whether *no* reasonable factfinder could resolve the matter in any other way. *Allen*, 357 F.3d at 1145. In determining whether the remaining number of jobs is enough, the Tenth Circuit does not ask how the starting number of jobs compares to the remaining number of jobs. Instead, the Tenth Circuit looks at the number of remaining jobs and asks if, for the types of jobs remaining, all reasonable factfinders would be compelled to conclude that their numbers are significant in the national economy.

The Court cannot conclude that 55,700 jobs is so significant that no reasonable factfinder would consider it insignificant. It is *well* short of the number of jobs the Tenth Circuit, in its only published guidance, says all reasonable factfinders would find to be a significant number—1.34 million jobs. *Raymond*, 621 F.3d at 1274. It is a third of the number of jobs deemed significant in the unpublished case of *Stokes v. Astrue*, which held that 152,000 jobs in the national economy is significant as a matter of law. 274 F. App'x 675, 684 (10th Cir. 2008). District courts in the Tenth Circuit have also declined to find harmless error when jobs exist in the national economy that number 49,957; 55,000; 39,000; 18,000; and 30,000. *See Ferguson v. Berryhill*, No. 16-1348, 2017 WL 2536436, at *5-6 (D. Kan. June 6, 2017) (collecting cases). In this district, in a thorough opinion, Judge Browning determined that 50,000 is not enough. *Sears v. Berryhill*, No.

17-0391, 2018 WL 2002487, at *8-11 (D.N.M. Apr. 30, 2018). And, in the past, this Court has declined to find even higher numbers to be significant as a matter of harmless-error review. *Montoya v. Berryhill*, No. 16-1089-SCY, 2018 WL 1580296, at *4 (D.N.M. Mar. 28, 2018) (78,000 jobs); *Olguin v. Berryhill*, No. 18cv482 SCY, 2019 WL 2232206, at *6-7 (D.N.M. May 23, 2019) (91,000 jobs); *Martinez v. Saul*, No. 19-cv-615 SCY, 2020 WL 835328, at *5 (D.N.M. Feb. 20, 2020) (70,000 jobs).

Given the high bar the Tenth Circuit has set for a court to determine significance as a matter of law, the Court declines to conclude as a matter of law that 55,700 jobs in the national economy constitutes a significant number.

## CONCLUSION

For the reasons stated above, Mr. Devlin's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 22, is **GRANTED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**